UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - X

M & T MORTGAGE CORPORATION,

                         Plaintiff,

        - against -


CEDRIC D. MILLER, <u>et</u> <u>al</u>.,

                         Defendants.

- - - - - - - - - - - - - - - - - X

<u>ORDER</u>

CV 2002-5410 (NG)(MDG)


Third party plaintiffs Cedric and Elizabeth Miller (the "Millers") move to compel non-party witness Gail Zucker to answer certain deposition questions against which she had asserted her Fifth Amendment privilege against self-incrimination. The Millers claim that Zucker waived her privilege by answering other deposition questions regarding the same subject matter.

## **DISCUSSION**

The Fifth Amendment protects a person from being "compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Although the amendment refers to criminal cases, this privilege "can be asserted in any proceeding, civil or criminal, . . . against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." <u>Kastigar v. United States</u>, 406 U.S. 441, 444-45 (1972); <u>see</u> <u>also</u> <u>Pillsbury Co. v. Conboy</u>, 459 U.S. 248, 256-57 (1983) (courts cannot compel civil deponent to testify over valid assertion of Fifth Amendment

privilege absent grant of immunity).

"The Fifth Amendment privilege is not self-executing; if not invoked it may be deemed to have been waived ...." In re DG Acquisition Corp., 151 F.3d 75, 80 (2d Cir. 1998). However, waiver of the Fifth Amendment "is not lightly to be inferred." Id. (quoting Emspak v. United States, 349 U.S. 190, 196 (1955)). Thus, "courts 'must indulge every reasonable presumption against waiver.'" Id. (quoting United States v. O'Henry's Film Works, Inc., 598 F.2d 313, 318-19 (2d Cir. 1979)).

The standards for determining waiver of Fifth Amendment rights vary depending on whether a witness is testifying voluntarily or under compulsion of a subpoena. See Sigety v. Abrams, 492 F. Supp. 1123, 1134-35 (S.D.N.Y. 1980), rev'd on other grounds, 632 F.2d 969 (2d Cir. 1980). When testimony is compelled, as here, the witness "must answer all relevant questions until that point arises in his testimony when incriminating matter for the first time is sought to be elicited; at that point the witness has the constitutional right to cut off questioning by asserting his Fifth Amendment privilege." Id. at 1135 (citing McCarthy v. Arndstein, 266 U.S. 34, 45 (1924)). As the Supreme Court explained in Brown v. United States, 356 U.S. 148, 153 (1958), "[a] witness who is compelled to testify, ... has no occasion to invoke the privilege against self-incrimination until testimony sought to be elicited will in fact tend to incriminate." Id. (discussing Arndstein, 254 U.S. 71; 262 U.S. 355; 266 U.S. 34, where a witness called to testify before special commissioners in bankruptcy proceedings found not

to waive privilege by having filed schedules of assets and liabilities). On the other hand, a witness who voluntarily takes the stand "may be impeached and his testimony assailed like that of any other witness, and the breadth of his waiver is determined by the scope of relevant cross-examination." Brown, 356 U.S. at 154-55.

The Millers allege that Zucker, a title closer, participated in a conspiracy with defendants Eric Fessler, Better Homes Depot ("BHD"), Nadine Malone, Madison Home Equities ("MHE") and Ackerman, Raphan & Sulzer to conceal defects in title and other irregularities from purchasers of MHE financed sales of real estate by BHD. At her deposition, Zucker testified generally about her business relationships with Fessler, BHD, Malone, MHE and Ackerman, Raphan & Sulzer. Zucker also testified about her practices and conduct as a title closer for BHD and identified her handwriting, notary stamp and signature on various exhibits. However, when asked to identify her handwriting, notary stamp or signature on other documents, Zucker asserted her Fifth Amendment privilege. Zucker also invoked her Fifth Amendment rights when asked whether she had ever done a closing with a referee or sheriff, whether she had altered any closing documents and her involvement in transactions where a deed was assigned.

After examining the deposition transcript, this Court finds that Zucker properly invoked her Fifth Amendment privilege since the responses sought could yield evidence of Zucker's participation in certain alleged frauds or fraudulent conduct involving BHD and other defendants. The Millers do not contest

the propriety of Zucker's invocation of her Fifth Amendment rights, but rather, argue that Zucker waived her rights by answering questions regarding the same subject matter as those she refused to answer. However, because Zucker testified under compulsion of subpoena, rather than voluntarily testifying on her own behalf,[1] no waiver occurred simply because she answered certain questions. See Dogan Enter. v. Hubsher, No. CV-84-3984, 1987 WL 20312, at *9 (E.D.N.Y. Nov. 4, 1987) (defendant who refused to answer deposition questions "is simply not the same case as if the defendant had taken the stand during the course of the trial and selectively refused to testify").

Since Zucker neither could determine the area of inquiry nor refuse to testify at all, waiver will not be found unless she voluntarily offered testimony which amounted to "an admission of

---

[1] The Second Circuit has a two prong test to determine whether a witness voluntarily testifying has waived her privilege against self-incrimination:

    1) the witness' prior statements have created a significant likelihood that the finder of fact will be left with and prone to rely on a distorted view of the truth, and 2) the witness had reason to know that his prior statements would be interpreted as a waiver of the fifth amendment's privilege against self-incrimination.

Klein v. Harris, 667 F.2d 274, 287 (2d Cir. 1981).

Even under this broader standard, the Millers are unable to establish waiver. The first prong of the test is satisfied only where "a failure to find a waiver would prejudice a party to the litigation." Id. at 288. The Millers can only point to alleged prejudice and distortion resulting from the other testimony and evidence provided by party witnesses, rather than Zucker. Cf. United States v. Miranti, 253 F.2d 135 (2d Cir. 1958) (no waiver from prior disclosures in different interrogation for different purposes). In addition, the deposition transcript offers no support for the second prong.

guilt or furnish[ed] clear proof of crime..." See Brown 356 U.S. at 155 (quoting Arndstein, 254 U.S. at 72; 262 U.S. at 358). Although some of Zucker's answers were in response to questions covering topics similar to questions she refused to answer, no waiver resulted since the answers she did give were not incriminating. See United States v. Courtney, 236 F.2d 921 (2d Cir. 1956) (witness who disclosed that he paid gratuities and identified some of the places where payments were made did not waive Fifth Amendment privilege to further questions regarding other payments and amounts); cf. Prentice v. Hsu, 280 F. Supp. 384 (S.D.N.Y. 1968) (defendant's testimony regarding notes he had signed and statements that he did not owe plaintiffs money not a waiver of Fifth Amendment privilege with respect to questions regarding his actions in his concert with others to defraud plaintiff). Thus, even if Zucker did selectively answer questions, she did not waive her Fifth Amendment privilege with her answers which did not disclose information "that might be characterized as incriminating." United States v. James, 609 F.2d 36, 45 (2d Cir. 1979); see also United States v. Clark, CIV No. 86-0288T, 1988 WL 142149, at *8 (W.D.N.Y. July 19, 1988) (quoting Rogers v. United States, 340 U.S. 367, 373 (1951)). Although permitting a witness "to withdraw from the cross-fire of interrogation" could result in "putting before the trier of fact a one-sided account," this "argumentative curtailment of the normal right of cross-examination [arises] out of regard for the fair claims of the constitutional protection against compulsory self-incrimination." Brown, 356 U.S. at 155.

## **CONCLUSION**

For the foregoing reasons, the Millers' motion to compel is

denied.

SO ORDERED.

Dated:    Brooklyn, New York
          September 7, 2005

                                        /s/
                                        _____
                                        MARILYN D. GO
                                        UNITED STATES MAGISTRATE JUDGE