UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -X

M&T MORTGAGE CORP.,

                Plaintiff,

       - against -

CEDRIC D. MILLER and ELIZABETH
MILLER, <u>et al.</u>,

      Defendants and
      Third-Party Plaintiffs,

       - against -

UNITED STATES DEPARTMENT OF HOUSING
AND URBAN DEVELOPMENT, <u>et al.</u>,

      Third-Party Defendants.

- - - - - - - - - - - - - - - - - -X

<u>ORDER</u>

CV 2002-5410 (NG)(MDG)

GO, United States Magistrate Judge:

    In this action removed from state court, third-party
plaintiffs Cedric and Elizabeth Miller (collectively the
"Millers" or "plaintiffs") assert claims for fraud, conspiracy to
commit fraud and violations of the New York Deceptive Practices
Act, N.Y. Gen. Bus. Law § 349.[1]  The Millers move for sanctions
against third-party defendants Better Homes Depot, Inc. ("Better
Homes") and Eric Fessler ("Fessler") (collectively the "Better
Homes defendants") for their purported spoliation of evidence.
Specifically, plaintiffs seek an order precluding the Better

---

[1] This action was removed by the United States Department of
Housing and Urban Development ("HUD") after being sued by the
Millers.  The Millers' claims against HUD and the claims against
the Millers brought by M&T Mortgage Corp. in the main action have
been settled.  <u>See</u> ct. doc. 110.

Homes defendants from opposing the Millers' central factual
allegations and directing that those factual allegations should
"be taken to be established for the purposes of the action"
pursuant to Rule 37(b) of the Federal Rules of Civil Procedure.

**BACKGROUND**

In their Third-Party Complaint, the Millers allege that the
Better Homes defendants engaged in a pattern and practice of
fraudulently inducing first-time, low-income, minority home
buyers to purchase houses at inflated prices.  Among the factual
misrepresentations alleged to have been employed by these
defendants are that: 1) the prospective buyer would be able to
rent one or more legal units in the property; 2) Better Homes was
offering the property to the purchaser at fair or market price;
and 3) Better Homes would undertake necessary repairs to the
property prior to closing.

Specifically, the Millers allege that in December 1998, they
contacted Better Homes to discuss the possibility of buying a
house.  See Answer and Amended Third Party Complaint ("Am.
Compl.") (ct. doc. 38) at ¶ 35.  The Millers expressed their
concern to Glenn John, a Better Homes broker, that they could not
afford to purchase a home.  Id. at ¶ 36.  To induce the Millers
to buy a property at 1230 Troy Avenue, Brooklyn, New York, John
told them that the purchase price was fair and reasonable, there
was a rental unit on the property that would generate at least

$1,200 per month, and all repairs would be completed before they moved in.  Id. at ¶¶ 58, 60, 62.  Although the Millers purchased the house for $219,000 on March 30, 1999, the current owner had purchased the house for $135,000 only six weeks earlier.  Id. at ¶¶ 61, 98.  In furtherance of the fraud, Better Homes obtained a fraudulent appraisal from third-party defendant CLA, Inc. valuing the property at the exact sale price of $219,000.  Id. at ¶¶ 83-90.

In reality, the property was not a legal two-family dwelling with a legal rental unit.  Id. at ¶¶ 59-60.  Better Homes renovated the property by converting the two above-ground stories of the building into a single, duplex, residential unit and installing a separate residential unit in the previously unfinished basement.  See Millers' Mem. in Support at 4 (ct. doc. 191-2).  However, Better Homes neither filed the requisite applications and plans nor obtained the necessary permits or inspection sign-offs from the New York City Department of Buildings.  See id.  Although John told the Millers that extensive repairs would be completed before they moved in, Better Homes never made those repairs.  Am. Compl. at ¶¶ 58, 71.

On or about June 29, 1999, Jules Polonetsky, Commissioner of the New York City Department of Consumer Affairs (the "DCA") commenced an enforcement action in the Supreme Court of the State of New York, New York County, against the Better Homes defendants for deceptive trade practices in the sale of residences.  See

Complaint, <u>Polonetsky v. Better Homes Depot, Inc.</u>, Index No. 402602/99 ("Polonetsky Action") at ¶ 8 (attached as Exh. A to Millers' Reply Mem.) (ct. doc. 210-4).  On or about August 10, 2000, the Polonetsky plaintiffs served the Better Homes defendants with a subpoena requiring the production of documents, including:

> 20.  For each real estate transaction in which BHD acted as seller or as agent, documents disclosing the extent, scope, and specific nature of renovations or repairs of the subject property performed or paid for by BHD, the cost of materials, and the number of hours of labor expended on such repairs or renovations; if the repairs or renovations were performed by contractor(s), the name(s) and address(es) of the contractor(s) who performed the work; whether work performed by BHD or contractor, documents indicating whether such work was done by licensed contractor; all bills or invoices submitted to BHD relating to the work; and the amount paid by BHD for the work; any appraisals, inspection reports, engineer reports, or other expert opinion regarding the value or condition of the property; and all permits obtained from local authorities authorizing such work.

Millers' Reply Mem., Exh. B (ct. doc. 210-5).  The Polonetsky Action was eventually settled in June 2003.

The Millers filed their initial Third-Party Complaint on October 2, 2002 and served the Better Homes defendants with their First Set of Interrogatories and Document Requests on November 6, 2003.  Among their discovery requests were:

> Interrogatory No. 17 and Document Request No. 20:  List of addresses of properties which were available for sale by and/or through Better Homes or were being shown by Better Homes for sale during the period January 1, 1998 to December 31, 1999.  For each property state and provide copies of all documents related to: . . .

B.   Where Better Homes was the owner of the property and/or a contract vendee, state:
. . . .
2.   The amount paid by Better Homes for the house;
3.   The name and address of the appraiser, if any, retained by or on behalf of Better Homes prior to its purchase and/or contract of purchase;
4.   The name and address of engineers, architects and/or home inspectors, whom/which visited and/or inspected the property prior to Better Homes' purchase or contract of purchase;
. . . .
7.   For any repairs, renovation, or other work performed by or on behalf of Better Homes to the property prior to its sale provide:
a.   reports and/or notes prepared;
b.   A description of the work performed;
c.   The name and address of the person(s) or entities that performed the work;
d.   The cost of such work;
e.   The form of payment for the work and copy of such payment;
f.   The date payment(s) were provided.

Millers' Mem. in Reply, Exh. J at 10-11 (ct. doc. 210-13).  The discovery requests were the focus of the Millers' motion to compel,[2] which was discussed at a conference held on March 16, 2004.

On February 2, 2005, this Court ordered Better Homes' former counsel, Borchert, Genovesi, LaSpina & Landicino ("Borchert, Genovesi"), to produce files concerning 36 properties sold by Better Homes that had been held by the firm in closed files with respect to the Polonetsky Action.  See ct. doc. 112.  Borchert,

---

[2] The March 2, 2004 motion to compel was faxed to my chambers but never docketed.

-5-

Genovesi withheld some of the documents in those files related to some of the properties, which the firm described in a privilege log, including "Profit/Expense Sheets," "Construction Cost Sheets" and "Closing Statements."  <u>See</u> Millers' Mem. in Support, Exh. J (ct. doc. 191-13).

The Millers served Better Homes with a Second Set of Document Requests dated May 20, 2005 demanding that Better Homes produce documents relating to all its transactions between January 1, 1998 and May 31, 2001 which were listed in an attached schedule.  Among those requests were:

> 4.   Copies of the complete file maintained by BHD for each of the properties listed on Schedule A annexed hereto, where BHD was the seller and where the FHA insured loan was originated by [third-party defendant Madison Home Equities] MHE;
>
> 5.   Copies of all correspondence between BHD and the New York City Department of Buildings regarding all properties listed on Schedule A annexed hereto, where BHD was the seller and where the FHA insured loan was originated by MHE;
>
> 6.   Copies of all documents, drawings and reports from architects, contractors and/or sub-contractors hired by BHD to make/perform repairs to any and all properties listed in Schedule A annexed hereto;
>      . . . .
>
> 13.  Copies of all relevant documents related to any and all BHD transactions on Schedule A annexed hereto, involving residential home sales in which MHE and/or Nadine Malone and/or Michael Rindenow participated from the period of January 1, 1998 to May 31, 2001; . . . .

Millers' Mem. in Support, Exh. F at 4-5 (ct. doc. 191-9).

On May 24, 2005, this Court granted the Millers' motion to compel the "production of files regarding prior sales involving the defendants."  <u>See</u> minute entry for status conference held on

5/24/05.  However, the Court limited the scope of the production

to "transfers closing between 1/1/99 through 5/31/00."  See id.

Better Homes subsequently responded that it did not have any

documents responsive to the relevant requests.  See Millers' Mem.

in Support, Exh. H at 3, 5 (ct. doc. 191-11).

In his deposition, defendant Fessler, President of Better

Homes, testified that Better Homes spent tens of thousands of

dollars repairing and rehabilitating the properties it sold.  See

Deposition testimony of Eric Fessler dated August 15, 2005

("8/15/05 Fessler Dep.") (ct. doc. 191-5) at 196-98.  Fessler

further testified about documentation generated in the course of

its transactions during the relevant time period.  For example,

after Better Homes acquired a property, one of its home

improvement inspectors would conduct an inspection and prepare a

written report when more extensive work was required.  See

Deposition testimony of Eric Fessler dated August 16, 2005

("8/16/05 Fessler Dep.") (ct. doc. 191-6) at 284-85, 287-91.  In

such cases, Better Homes' construction division would obtain

written estimates from contractors.  Id. at 290-91.  When

necessary, the contractors prepared plans or blueprints and

obtained work permits from the New York City Department of

Buildings.  Id. at 291-92.

However, Fessler also testified that Better Homes did not

keep any documents related to properties it sold between January

1, 1999 and May 31, 2000.  Fessler claimed that closing files for

Better Homes' sales were periodically thrown away once the file cabinets reached full capacity.  See 8/15/05 Fessler Dep. at 164-65; 8/16/05 Fessler Dep. at 356-57; Affidavit of Eric Fessler dated 2/13/07 ("Fessler Aff.") at ¶¶ 4, 9.  Although Fessler testified that information regarding the costs of the repair and renovation of properties it sold during the relevant time period were maintained in electronic form, it appears that such information no longer exists.  See 8/15/05 Fessler Dep. at 171-72; Fessler Aff. at ¶ 3; Affidavit of Richard Kayel dated February 15, 2005 ("Kayel Aff.")

On or about January 11, 2006, third-party defendant Ackerman, Raphan & Sulzer ("ARS"), which represented Better Homes and third-party defendants Madison Home Equities in the Millers' purchase and loan, produced documents relating to 71 of the 167 transactions listed in the Millers' document requests.  See Affidavit of Trevor Colas dated May 25, 2006 at ¶ 3 ("Colas Aff.") (attached to Millers' Mem. in Support as Exh. M) (ct. doc. 191-16); Affidavit of Morgan Kunz dated May 25, 2006 at ¶ 3 ("Kunz Aff.") (attached to Millers' Mem. in Support as Exh. M) (ct. doc. 191-16).  The files for most of the 71 properties contained a "Closing Statement" stating the date and purchase price of Better Homes' acquisition.  See Colas Aff. at ¶ 4; Kunz Aff. at ¶ 4.  However, those files contained no documents concerning any repairs or rehabilitations of the properties.  See Colas Aff. at ¶ 5; Kunz Aff. at ¶ 5.

# DISCUSSION

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999). Under Fed. R. Civ. P. 37(b), the court may impose sanctions for spoliation of evidence in violation of a court order. See id.; John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc., 845 F.2d 1172, 1176 (2d Cir. 1988). "Even without a discovery order, a district court may impose sanctions for spoliation, exercising its inherent power to control litigation." West, 167 F.3d at 779; see Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 106-07 (2d Cir. 2002). Any sanction imposed should serve the threefold "aims of: (1) deterring future spoliation of evidence; (2) protecting the defendants' interests; and (3) remedying the prejudice defendants suffered . . . ." West, 167 F.3d at 780.

A party seeking a sanction for spoliation of evidence must establish "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind;' and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." Residential Funding, 306 F.3d at 107; see Fujitsu Ltd. v. Federal

-9-

Exp. Corp., 247 F.3d 423, 436 (2d Cir. 2001).

    (1) Duty to Preserve

    As to the first criteria, "[t]he obligation to preserve
evidence arises when the party has notice that the evidence is
relevant to litigation or when a party should have known that the
evidence may be relevant to future litigation." Fujitsu, 247
F.3d at 436; see Kronisch v. United States, 150 F.3d 112, 127 (2d
Cir. 1998). This means that, "[o]nce a party reasonably
anticipates litigation, it must suspend its routine document
retention/destruction policy and put in place a 'litigation hold'
to ensure the preservation of relevant documents." Zubulake v.
UBS Warburg LLC, 220 F.R.D. 212, 218 (S.D.N.Y. 2003); see In re
NTL, Inc. Sec. Litig., No. 02 Civ. 3013, 2007 WL 241344, at *19
(S.D.N.Y. Jan. 30, 2007); Chan v. Triple 8 Palace, Inc., No. 03
Civ. 6048, 2005 WL 1925579, at *6 (S.D.N.Y. Aug. 11, 2005).

    The Millers argue that the duty to preserve attached in June
1999, when the DCA filed its complaint in the Polonetsky Action.
This Court agrees. Once Better Homes and Fessler were served
with the complaint in the Polonetsky Action on June 29, 1999,
they should have known that the documents that Fessler admittedly
destroyed would be relevant to that action. See affidavits of
service dated July 12, 1999 (attached to Millers' Reply as Exh.
A) (ct. doc. 210-4). The allegations in that complaint are
strikingly similar to the allegations here -- i.e., that the
Better Homes defendants "induc[ed] consumers to purchase a home

with promises of making needed repairs and renovations, and then fail[ed] to make the promised repairs and renovations;" caused "repairs and renovations to be made without the required permits and without informing consumers of the failure to obtain the required permits;" and offered and sold "homes to consumers at greatly inflated prices while claiming to be selling homes at below market rates." Polonetsky Compl. at ¶¶ 39, 41, 45.

Contrary to the Better Homes defendants' strained argument, that action was not limited to "36 distinct individual purchasers of homes from Better Homes" or any other specific consumers. See Mem. of Law in Opp. (ct. doc. 209) at 5. In that case, as here, the DCA alleged that the Better Homes defendants "repeatedly committed deceptive trade practices" and sought an injunction against the Better Homes defendants "from further violating the Consumer Protection Law and from committing the deceptive acts or practices." Polonetsky Compl. at 2, 11-12; compare Am. Compl. at ¶¶ 3, 156 ("[t]he mortgage was made as a part of a series of fraudulent, abusive and deceptive actions;" third party defendants effectuated "a widespread pattern of fraudulent selling and mortgage financing . . ."). In arguing against a stay of discovery, the DCA's counsel confirmed that "[t]he Amended Complaint alleges several deceptive practices in the way defendants conduct business on a regular basis, not with respect to the[] particular homeowners [listed in the complaint] only." Millers' Reply Mem., Exh. E at 2-3 (ct. doc. 210-8). In fact,

the trial court observed that the complaint did "not concern a single house sale, or even a series of mere house sales" but involved "defective practices affecting the public at large." Polonetsky v. Better Homes Depot, Inc., 185 Misc.2d 282, 289-91 (N.Y. Sup. Ct. 2000).  Clearly, Better Homes was on notice that information concerning its repair, rehabilitation and sale of residential homes was relevant to that litigation and, as a result, Better Homes was obligated to preserve that evidence.

The Better Homes defendants also incorrectly claim that "[a]t no time during the Polonetsky Litigation was a discovery demand ever served that sought the production of any documents relating to any of Better Homes' purchasers other than the parties thereto." See Mem. in Opp. at 5.  On the contrary, in August 2000, the Polonetsky plaintiffs served Better Homes and Fessler with a subpoena requesting the production of documents "[f]or each real estate transaction in which BHD acted as seller or as agent."  Millers' Reply, Exh. B at ¶ 20.  In arguing for a stay of discovery pending appeal of the trial court's order on the defendants' motion to dismiss, counsel for the Better Homes defendants pointed to the breadth of plaintiffs' requests, noting that the subpoena sought "[d]ocuments related to all properties sold by Better Homes" and "[d]ocuments related to renovations made to all of Better Homes' properties."  Millers' Reply, Exh. C at ¶ 8 (ct. doc. 210-6).  Thus, not only was Better Homes on notice of its duty to preserve documents relevant to the claims

-12-

in the Polonetsky Action by June 1999, it received the DCA's subpoena for the documents at issue in August 2000. Although the state trial court granted Better Homes' motion to stay discovery, the New York State Court of Appeals subsequently upheld the position of the plaintiffs on November 19, 2001 and reinstated all claims against the Better Homes defendants. See Polonetsky v. Better Homes Depot, Inc., 97 N.Y.2d 46 (2001). Before settlement of the Polonetsky Action in June 2003, the Millers brought their claims against the Better Homes defendants in October 2002.

Although Better Homes and several other defendants sought at the onset of this action to file motions to dismiss in lieu of answering (ct. docs. 11, 21, 22, 24, 25, 27), the parties were expected to proceed with discovery. Following an initial conference on December 17, 2002 to discuss a schedule for discovery and settlement, I entered a scheduling order at the next conference on January 24, 2003 setting a November 15, 2003 deadline for completion of discovery. See minute entries for 12/17/02, 1/24/03. In referring the parties to court annexed mediation at a conference on February 26, 2003, I warned the parties that "[d]iscovery is not stayed pending settlement discussions and determination of the motions to be filed." See minute entry for 2/26/03.

At these earliest conferences, counsel for the Millers made clear that they intended to obtain information regarding the

practices of the Better Homes defendants, particularly ones involving financing obtained from defendant Madison Home Equities.  In subsequent conferences on November 18, 2003 and on March 16, 2004, I directed the Millers to narrow the scope of their discovery requests, but made clear that the Court would permit discovery regarding the practices of Better Homes and sales to other purchasers.

Under these circumstances, there is no question that the Better Homes defendants have been aware of their continuing duty since June 1999 to preserve the documents sought by plaintiffs in this litigation.  Although the duty to preserve documents originally arose in the Polonetsky Action, the documents that Better Homes was obligated to preserve in that action differ little, if at all, from the documents that should have been preserved in this case given the substantial overlap in the claims and factual allegations in these two litigations.  Even had the Polonetsky Action ended before commencement of this third-party action by the Millers, the Better Homes defendants should have reasonably anticipated that separate litigations could have been brought by individual purchasers, which has indeed occurred.

(2) <u>Culpable State of Mind</u>

Although culpability may be found where a party intentionally destroyed evidence or acted in bad faith, the requisite state of mind may sometimes be satisfied by a showing

of ordinary negligence.  Residential Funding, 306 F.3d at 101.

Since the failure to produce evidence occurs "along a continuum

of fault," the determination of the degree of culpability

required to support a finding of spoliation must be made on a

case by case basis.  Reilly v. Natwest Markets Group Inc., 181

F.3d 253, 267 (2d Cir. 1999) (citation omitted).  Such an

approach affords trial judges the "leeway to tailor sanctions to

insure that spoliators do not benefit from their wrongdoing -- a

remedial purpose that is best adjusted according to the facts and

evidentiary posture of each case."  Id.

The evidence that Better Homes knowingly destroyed the

documents sought by plaintiffs and failed to produce any

documents concerning properties sold involving FHA loans

originating from defendant Madison Home Equities is undisputed.

As Fessler admitted in his deposition, Better Homes disposed of

closing files and other documents related to its real estate

transactions "whenever the file cabinets get filled up with

files."  8/16/05 Fessler Dep. at 356-57; see 8/15/05 Fessler Dep.

at 164-65;  Fessler Aff. at ¶ 4.  Fessler estimated that files

would be thrown out between ninety days and one year after a

closing occurred.  Fessler Aff. at ¶ 4.  Moreover, although

Fessler testified that Better Homes maintained information

regarding the amount Better Homes paid for the houses it sold and

its expenses of repair and renovation in electronic form for tax

purposes, the Better Homes defendants have not been able to

-15-

locate that information.  8/15/05 Fessler Dep. at 171-72; 6/7/06 Fessler Dep. at 137; Sgro Aff. at ¶ 2-3; Fessler Aff. at ¶ 3; Kayel Aff. at ¶ 3.  Fessler also testified that Better Homes' inspectors prepared written inspection reports for properties with more than cosmetic defects and contractors prepared written estimates of the costs required for any repairs.  8/16/05 Fessler Dep. at 287-91.  None of these documents have been produced.

Plaintiffs also point to the existence of construction cost documents relating to 25 different properties which are listed on a privilege log prepared by prior counsel for the Better Homes defendants, Borchert, Genovesi.  See Millers' Mem. in Support, Exh. J.  In addition, ARS produced files relating to 71 properties sold by Better Homes, nearly all of which included a "Closing Statement" containing the date and purchase price for Better Homes' acquisition of the property.  Since Borchert, Genovesi appears to possess "Construction Cost Sheets" and "Closing Statements" for 25 of the 38 properties for which it has files and ARS produced "Closing Statements" for nearly all of the 71 properties for which it had files, it is reasonable to conclude that such documents were created for most, if not all, of the properties sold by Better Homes.  See In re NTL, 2007 WL 241344, at *22 (destroyed e-mails would likely reveal similar information to those already produced); Phoenix Four, Inc. v. Strategic Resources Corp., No. 05 CIV. 4837, 2006 WL 1409413, at *6 (S.D.N.Y. May 23, 2006) (documents deleted from server would

be relevant to plaintiff's case since similar evidence from server supported plaintiff's claims); <u>Chan</u>, 2005 WL 1925579, at *9 (records that were similar to those destroyed showed relevance of unavailable records); <u>Golia v. The Leslie Fay Cos.</u>, No. 01 Civ. 1111, 2003 WL 21878788, at *10-*11 (S.D.N.Y. Aug. 7, 2003).

On the other hand, there is no direct evidence that Better Homes ever possessed documents concerning building applications or permits obtained from the New York City Department of Buildings. On the contrary, Fessler testified that Better Homes relied on its contractors to obtain any necessary permits and that Better Homes did not check to ensure that they were in fact obtained. Deposition testimony of Eric Fessler dated September 23, 2005 (ct. doc. 191-7) at 652-53. In addition, although Borchert, Genovesi appears to possess "Profit/Expense Sheets" regarding 18 properties, Fessler denied that such documents were routinely created for each transaction. <u>See</u> Deposition testimony of Eric Fessler dated June 7, 2006 ("6/7/06 Fessler Dep.") (ct. doc. 191-8) at 130-31. Therefore, the Millers have not established that the Better Homes defendants destroyed such documents.

On this essentially uncontested record, plaintiffs have demonstrated, at the very least, that the Better Homes defendants were grossly negligent in intentionally destroying the real estate records discussed above despite a duty to preserve for the Polonetsky Action and this litigation. <u>See</u> <u>In re NTL</u>, 2007 WL

241344, at *20 (failure to institute litigation hold constituted gross negligence); Phoenix Four, 2006 WL 1409413, at *5-*6 (defense counsel's failure to conduct a reasonable and timely inspection of defendant's computers and servers, which resulted in late discovery and production of 200-300 boxes of documents, constituted gross negligence); Chan, 2005 WL 1925579, at *7 ("[T]he utter failure to establish any form of litigation hold at the outset of litigation is grossly negligent"); Zubulake, 220 F.R.D. at 221 (failure to preserve employee's backup tapes that were particularly relevant to plaintiff's allegation was grossly negligent if not reckless); Golia, 2003 WL 21878788, at *8-*9 (S.D.N.Y. Aug. 7, 2003) (defendant's failure to prevent employee from destroying documents at time she was terminated was "grossly negligent"); Pastorello v. City of New York, 2003 WL 1740606, at *11 (S.D.N.Y. Apr. 1, 2003) (loss of data resulting from unfamiliarity with record keeping policy was grossly negligent). However, Fessler's claim that documents were destroyed because of limited filing space and absence of a reason to keep them strains credulity. Conspicuously absent from the affidavits of Richard Kayel, Better Homes' bookkeeper and Diane Sgro, its office manager, is any corroboration of Fessler's description of Better Homes' haphazard document retention policy. In fact, both Kayel and Sgro attest that they have never destroyed or disposed of any documents or electronic information relating to transactions

taking place from January 1, 1999 through May 30, 2000.  Kayel
Aff. at ¶ 4; Sgro Aff. at ¶ 5.

Significantly, even though the scope of discovery has been
hotly contested throughout this litigation, the Better Homes
defendants never mentioned that they no longer retain most of the
documents sought.  Plaintiffs served an initial set of requests
in November 2003.  These requests were specifically discussed at
a conference on March 16, 2004 at which the parties were directed
to attempt to narrow the scope of requests.  At a conference on
April 16, 2004, this Court again directed the Millers to narrow
their discovery requests.  However, observing that the substance
of several requests regarding other transactions were generally
appropriate, I noted that plaintiffs would be entitled, at the
very least, to information relating to transactions occurring in
1998 and 1999.  I also directed the production of records
regarding 36 transactions produced in the Polonetsky Action since
they were held by counsel for the Better Homes defendants,
Borchert, Genovesi, and were readily available.  When counsel
indicated that his firm intended to move to withdraw, I directed
that he communicate to the clients the discovery ordered so that
discovery could promptly resume after the question of
representation was resolved.  Until the Better Homes defendants
responded to the plaintiffs' second set of interrogatories and
document requests dated May 20, 2005 that are the subject of this

spoliation motion, the Better Homes defendants never indicated that they no longer had any responsive documents.

Moreover, many of the documents Fessler claims he destroyed include those that Better Homes would have been required to keep under the Internal Revenue Code for at least three years.  See U.S. v. Fior D'Italia, Inc., 536 U.S. 238, 256 (2002) ("the Code imposes a general obligation upon all taxpayers to keep records relevant to their liability according to regulations promulgated by the Secretary, 26 U.S.C. § 6001 . . ."); 26 U.S.C. §§ 6001 (taxpayer must keep such records as the Secretary prescribes), 6501(a) (any tax must be assessed within three years after return is filed subject to certain exceptions); 26 C.F.R. § 1.6001-1(a), (e).  The pertinent Treasury Regulations require that each taxpayer retain those books and records (including computer files) that are sufficient to establish the amount of gross income, deductions, credits, or other matters required to be shown in any tax return.  See 26 C.F.R. § 1.6001-1(a); Rev. Rul. 71-20, 1971-1 C.B. 392.  Such books or records must be kept available for inspection so long as they are material.  See 26 C.F.R. § 1.6001-1(e).

Although the destruction of records that Better Homes was required to retain under the Treasury Regulations may not suffice to trigger a presumption of spoliation under Second Circuit law,[3]

---

[3]  The Second Circuit in Byrnie declined to follow the broader rule of other circuits that "destruction of evidence in
(continued...)

the failure of the Better Homes defendants to preserve or produce such financial and other records in the face of the widely known legal obligation to do so is probative of their culpable state of mind. Since Fessler testified that he had maintained records of repairs and improvements for tax purposes, he clearly was aware of the need to keep such records.

Fessler's nonchalant explanation for destruction of the documents is particularly unconvincing given the scale of Better Homes' business. As reflected in a list compiled by counsel for the Millers presented at the conference on March 16, 2004, Better Homes sold over three hundred properties for the three year period between April 1997 and May 2000. Since all but a few of the properties were sold at purchase prices in excess of $150,000, these transactions totaled well over $50 million. No business with such revenues would throw out important records simply for lack of file cabinet space. The documents pertaining to sales and repairs made, including applications for permits, invoices and purchase agreements, would be pertinent to any future litigation involving claims of fraud or breach of contract with purchasers and contractors, as well as the tax liability of Better Homes.

---

[3](...continued)
violation of a regulation that requires its retention can give rise to an inference of spoliation." Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 108-09 (2d Cir. 2001). Instead, the court additionally required that the party seeking sanctions be a member of the general class of persons that the regulatory agency sought to protect in promulgating the rule. Id. at 109.

Likewise, Fessler, who testified he owns substantial assets and has extensive business experience, simply does not lack the sophistication to understand the significance of the records destroyed.  See 8/15/05 Fessler Dep. at 119-22.  He testified that he has engaged in thousands of real estate transactions, including his experience at Better Homes.  See 8/16/05 Fessler Dep. at 423, 431-32.  That he should have understood the importance of maintaining adequate records to support his tax filings is underscored by the fact that he previously pled guilty in this Court to a three count information for tax evasion, conspiracy to defraud and payment of kickbacks for referrals of mortgage loans.  See U.S. v. Fessler, 91-CR-1077 (E.D.N.Y.) (TCP); 8/15/05 Fessler Dep. at 24-25; 6/7/06 Fessler Dep. at 10.

Under these circumstances, I find that the purported destruction of the records sought by plaintiffs reflect not merely gross negligence, but bad faith on the part of the Better Homes defendants.  Irrespective of the degree of culpability, the undisputed "intentional destruction of documents in the face of a duty to retain those documents" is sufficient to show a "culpable state of mind" to justify an inference of spoliation.  See Residential Funding, 306 F.3d at 108; Byrnie, 243 F.3d at 108.

(3) Relevance

In this context, relevance means more than sufficiently probative to satisfy Fed. R. Evid. 401.  See Residential Funding, 306 F.3d at 108-09.  The party claiming spoliation must

demonstrate that the destroyed evidence would have supported its claims.  See id. at 107-09; Byrnie, 243 F.3d at 108-10.

"Where a party destroys evidence in bad faith, that bad faith alone is sufficient circumstantial evidence from which a reasonable fact finder could conclude that the missing evidence was unfavorable to that party."  Residential Funding, 306 F.3d at 109.  "Similarly, a showing of gross negligence in the destruction or untimely production of evidence will in some circumstances suffice, standing alone, to support a finding that the evidence was unfavorable to the grossly negligent party." Id.  Otherwise, the moving party must submit extrinsic evidence sufficient to infer that the missing documents would have been favorable to it.  Id.

The missing documents are clearly critical to plaintiffs' claims.  Although the Better Homes defendants now argue that the Millers' pattern and practice allegations "are ancillary at best to Third-Party Plaintiffs actual claims," Mem. in Opp. at 13, Fessler, in fact, testified that "[i]t is truly unfortunate that these records . . . no longer exist because I believe that the documents would have supported Better Homes defenses to third party plaintiffs claims."  Fessler Aff. at ¶ 10.  In addition, as the Millers point out, evidence of pattern and practice is relevant to their demand for punitive damages with respect to their claims for fraud, those brought under the New York Deceptive Practices Act and to show intent or absence of mistake

on the part of the Better Homes defendants.  See <u>Vinlis Const.</u> <u>Co. v. Roreck</u>, 27 N.Y.2d 687, 689, 314 N.Y.S.2d 8, 9 (1970) (to recover punitive damages for fraud, the fraud must be aimed at the public generally); Fed. R. Evid. 404(b); N.Y. Gen. Bus. Law § 349.  Without information concerning the repairs and renovations performed on properties sold by Better Homes, the Millers have been hampered in their efforts to conduct discovery on whether the Better Homes defendants, in fact, fulfilled their promises to conduct repairs and renovations on the properties. Nor would the Millers have sufficient information to determine whether the properties were sold for fair market value.

Thus, the primary contested issue is whether the destroyed documents would support plaintiffs' claims or the defenses of the Better Homes defendants.  Courts must not "hold[] the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed evidence," because doing so "would allow parties who have . . . destroyed evidence to profit from that destruction."  <u>Kronisch</u>, 150 F.3d at 128.  Since the most obvious source of plaintiffs' proof has been destroyed, requiring direct proof of the contents of the documents would thwart the purpose of the rule.  See <u>id.</u>

Better Homes contends that the Millers have not presented any evidence demonstrating that the missing documents would support their claims.  However, since this Court has already found that the Better Homes defendants acted in bad faith in

destroying the documents, such improper conduct alone is
sufficient to support a finding that the documents were
unfavorable to Better Homes.  <u>Residential Funding</u>, 306 F.3d at
109.  Even if the conduct of these defendants amounts only to
gross negligence (which is undisputed), the destruction of the
documents occurred under circumstances that also justify a
finding that the evidence would be relevant, particularly given
the pendency of this and the Polonetsky Action and the importance
of such documents to an ongoing real estate development concern
such as Better Homes.  <u>Id.</u>

     In any event, the complaints filed in several other cases
against the Better Homes defendants contain verified statements
or allegations persuasively supporting the existence of probative
evidence showing that the destroyed or missing records would have
been detrimental to the defenses of the Better Homes defendants.
Judith Phillips asserts in her Verified Complaint that Better
Homes failed to make the repairs it had promised.  Complaint at
¶¶ 25, 82, <u>Phillips et al. v. Better Homes Depot, Inc.</u>,
2002-cv-01168 (SLT)(VVP).  In their complaint filed in this
Court, Linda and Kimberly Council detail their distressful
experience purchasing a residence from Better Homes -- an
inflated sales price, misrepresentations regarding the legal use
of the residence and unfulfilled promises of repairs to be made.
<u>See</u> Complaint at ¶¶ 57-58, 77-79, <u>Council, et al. v. Better Homes
Depot, Inc.</u>, 2004-cv-05620 (NGG)(VVP).  Third-party plaintiff Leo

White made strikingly similar allegations against the Better Homes defendants in his verified third-party complaint. <u>See</u> Complaint at ¶¶ 45-47, 49, <u>M&T Mortgage Corporation v. White</u>, 2004-cv-04775 (NGG)(VVP). In addition, the DCA alleged in the Polonetsky complaint that it had "received 15 or more complaints from consumers who purchased homes from Better Homes [from] which a pattern of misrepresentations and deceptive trade practices on the part of Better Homes and Eric Fessler has emerged." Polonetsky Compl. at ¶ 18. Approximately ten of the complaints received involved false "promises of needed repairs and renovations, which the defendants then failed to make or carried out in a shoddy and incomplete manner;" performance of work without permits; and sales at "greatly inflated prices." <u>Id.</u> at ¶ 19. Although these parallel complaints cannot be taken as conclusive proof of the conduct of the Better Homes defendants, they provide sufficient evidence to support an inference that the destroyed or missing documents "would have been of the nature alleged by the party affected by its destruction." <u>Kronish</u>, 150 F.3d at 127.

The Better Homes defendants further argue that documents recently discovered by third-party defendant Madison Home Equities support their defense that repairs that were promised to be performed were "in fact performed to the satisfaction of Better Homes Depot Inc.'s customers." Fessler Aff. at ¶ 10. These documents consist of 96 "final walk through and inspection

report[s]" in which purchasers acknowledged that they have
inspected the property, that all of the work that Better Homes
was to perform to the property was satisfactorily completed, and
that they released Better Homes from any liability concerning the
physical condition of the property. See ct. docs. 209-7, 209-8.
However, these documents do not describe the scope of the work
Better Homes performed on each property nor the fair market value
of each property at closing, two key issues the Millers sought to
clarify through discovery of the missing documents. Furthermore,
the reliability of these reports is called into doubt by the
allegations contained in the Polonetsky complaint. In one
example given, a consumer was "induced to sign a completion
statement at the closing, [even though] important parts of the
repairs and renovation had not been done, were incomplete, or
were seriously deficient[,] the roof had been improperly
installed; the windows had been installed over old, rotted wood;
and the electrical and plumbing work was incomplete." Polonetsky
Complaint at ¶ 24. The DCA also alleged with respect to another
purchaser that "[a]lthough she was induced to sign a completion
statement at the closing, important parts of the repairs and
renovations were not done or were seriously deficient or even
dangerous. These items include, among others, a heating system
which fails to deliver heat evenly throughout the house;
unevenness and sinking in the floors, with probable deterioration
of the flooring, beam and joists; a kitchen exhaust vent and

dryer vent which have been closed off; and pronounced chipping and breaking off of concrete on the patio."  Therefore, these newly produced "walk through" reports do not preclude the inference at this juncture[4] that the missing documents would have been unfavorable to the Better Homes defendants, particularly given the circumstances of their destruction.

Sanction

As a sanction for Better Homes' admitted destruction of documents relating to properties it sold, the Millers seek an order precluding the Better Homes defendants from opposing the allegations that they engaged in a pattern and practice of making fraudulent misrepresentations in the repair, rehabilitation and sale of residential homes.  In addition, the Millers request the Court to order that their allegations should be taken as established that the Better Homes defendants did not conduct all the repairs promised to the purchasers of 167 properties, sold those properties at inflated prices and converted residences to two to four-family dwellings without obtaining approvals or permits from the New York City Department of Buildings.  See Millers' Mem. in Support at 34-35.

---

[4] The Court's role is limited to determining whether evidence was destroyed with a "culpable state of mind" and whether the party seeking the adverse inference has adduced enough evidence for a reasonable jury to infer that the missing documents were unfavorable to the culpable party.  Residential Funding, 306 F.3d at 109 n.4.  Whether the missing documents were in fact unfavorable to the culpable party is an issue of fact for the jury.  Id.

The requested sanctions, which would effectively preclude the Better Homes defendants from opposing the Millers' central factual allegations and would be tantamount to granting judgment in favor of the Millers, are too severe.  Cf. West, 167 F.3d at 779 (noting that "dismissal is a drastic remedy" that "should be imposed only in extreme circumstances, usually after consideration of alternative, less drastic sanctions").  Not only are the specific issues that plaintiffs seek to preclude the Better Homes defendants from contesting tendentiously drafted, they cover matters going far beyond the information contained in the destroyed or missing documents.  For example, plaintiffs seek to preclude litigation on the issue "[t]hat BHD did not conduct repairs and rehabilitation sufficient to justify BHD's inflated selling prices to the 167 purchases ... or to justify BHD's 461% average annualized return on its initial investment in the ... properties."  Even if Better Homes failed to make promised repairs, the determination whether a sales price is inflated or what Better Homes' "average annualized return" is may depend on other factors and proof of other facts not presented to the Court, including what repairs were promised or the market value of each of the 167 properties.  Likewise, whether a sales price or return on an investment is "justified" may not even be matters that need to be determined and, in any event, are best left to the jury.

I find a more restricted discovery sanction will adequately serve to protect the Millers, remedy the prejudice to them caused by the destruction of the documents and deter future improper conduct.  Thus, the plaintiffs' motion is granted and sanctions are imposed to the following extent:

(1)  Hereafter, at trial or other proceeding and in any submission in this action, the Better Homes defendants are precluded from offering any documentary evidence concerning the sales of the 167 properties identified by the Millers as the "limited Schedule A" properties which are not contained in documents that they previously produced and which were covered by the Millers' discovery requests to them.  This means, <u>inter</u> <u>alia</u>, that they may not introduce documents not previously produced concerning repairs, contractors hired and contracts made, work performed, applications made to the New York City Department of Buildings, permits obtained and expenses incurred, even if Fessler has given testimony about these documents.

(2)  The jury should be instructed, in substance, as follows:  "The Better Homes defendants have admitted that they failed to produce or intentionally destroyed documents concerning the sale and repair of the 167 properties, which they were obligated to retain and provide in this litigation.  You may presume that the documents destroyed or not produced would have been important to the Millers in

-30-

proving whether promised repairs had been made at all and the extent of the repairs.  You may infer from these circumstances and the evidence presented that the Better Homes defendants made no or minimal repairs to some or all of the 167 properties before they were sold by Better Homes. You may make these inferences against Better Homes and Fessler notwithstanding any other evidence that another party may produce regarding repairs."

Similar sanctions have been approved by the Second Circuit. See, e.g., Residential Funding, 306 F.3d at 113 (adverse inference instruction); West, 167 F.3d at 780 (endorsing use of alternative sanctions to dismissal, including adverse presumption instruction, barring a party from presenting evidence, and preventing witness from testifying about spoliated evidence); Kronisch, 150 F.3d at 126 (finding that jury should be permitted to draw adverse inference based on destruction of documents).

This Court is cognizant of the potential effect that any sanction may have on the positions of the other third-party defendants, none of whom have been mentioned in this spoliation motion, but who have been alleged by the Millers to have acted in concert with the Better Homes defendants in engaging in the pattern of fraudulent conduct.  However, these other parties have not voiced any opposition to the instant motion or the relief requested.  On the other hand, because they have not been limited to presenting evidence that may have originated from the Better

Homes defendants, the above adverse inference instruction is designed to deprive the Better Homes defendants of the full benefit of any evidence presented by these other parties. The instruction regarding the duty of the Better Homes defendants to retain the documents is also appropriate because of the wilful conduct of the Better Homes defendants discussed above.

Notwithstanding the adverse inference, the Millers will be permitted to introduce evidence as to the existence of the documents and how they came to be destroyed, since this evidence may be considered by the jury in determining the significance of the documents destroyed. To be sure, Fessler's admission that the documents were intentionally disposed of "will provide fertile ground for plaintiff to explore at trial." See Golia, 2003 WL 21878788, at *10.

Since the Millers have not adequately established that documents concerning work permits and "Profit/Expense Sheets" were ever in Better Homes' possession, the sanctions imposed have been limited to documents concerning repairs and the value of the properties sold by Better Homes. However, this ruling is without prejudice to a further application containing proof that any of these documents were within the "custody, possession or control" of the Better Homes defendants or a motion to compel. See Fed. R. Civ. P. 34; Pitney Bowes, Inc. v. Kern Intern., Inc., 239 F.R.D. 62, 66 (D. Conn. 2006) (noting that courts in the Second Circuit broadly define "control" to include inquiry into the

practical ability of a party to obtain requested documents) (citation omitted).

Finally, since the Millers argue that Better Homes' duty to preserve arose on June 29, 1999, the inference arguably should be limited to documents concerning properties that were sold after that date. Since Fessler testified that he did not immediately throw out files after a closing and Better Homes had an obligation to retain tax records for three years, this Court declines to limit the scope of the adverse inference which, as framed, covers sales beginning on January 1, 1999.

## CONCLUSION

For the foregoing reasons, the Millers' application for sanctions is granted. The Millers are entitled to preclusion and an adverse inference charge as set forth above.

**SO ORDERED.**

Dated: Brooklyn, New York
        August 17, 2007

                                    _____/s/_____
                                    MARILYN D. GO
                                    UNITED STATES MAGISTRATE JUDGE